The United States Court of Appeals for the Ninth Circuit is now in session. Thank you and welcome to the Ninth Circuit. I'm Judge Nelson and it's a pleasure to be joined by my colleagues, Judge Bivey and Judge Bolton. We're very grateful for our visiting judges who come out and help us handle our caseload and it's been a pleasure to be with Judge Bolton these last couple of days. We'd also like to welcome counsel. We're so glad to see so many returning in person. It's a welcome relief as we make this transition back to the way things used to be. And we also welcome counsel who will be on virtually and grateful that we can accommodate everyone in this. We ask that during arguments you please keep to your allocated time frames, sum up as your time is expiring, and let us know if you want to reserve any time for rebuttal. We're ready to proceed with our oral argument calendar. We've submitted two cases, United States v. Cohen, case number 19-10288, and James v. Kijikazi, case number 21-35586. We have three arguments today. We'll start with Vantobo v. Johns, case number 20-16853, and that case is set for ten minutes per side. And I guess we're split, appellants will be splitting the time, having one do the opening and one do the rebuttal. Perfect. We'll welcome then, is it Ms. Massey first? Okay. Go ahead. My name is Megan Massey. I'm a certified law student. Our supervising attorney, Gregory Sisk, is here with us today. I'd like to reserve four minutes of our time for rebuttal if I may co-counsel. Defendants chose to move to self-rejection. I'll call the motion. I'll read our argument. K chose to submit a sworn declaration from Dr. Johns. In the actual record, does Dr. Johns give an explanation on why surgery is a mistaken record? Well, let me ask you about that, because she does give an explanation. I guess the question is whether it's sufficient. She says it's elective surgery. Does that raise the question of whether this is objectively reasonable? She doesn't seem to give a medical explanation for why the surgery isn't necessary, but in what way? Tell me what you think this explanation does preserve for them. No, Your Honor. It's not a medical reason, and this court has held, for example, in college, that a non-medical reason for non-treatment is a basis of evidence, and to the point about it being elective surgery. Elective surgery just means that it's not an emergency. We don't need to put you in the ambulance right now. But it doesn't go to any comment on the necessity of the surgery or how important the surgery is. So just because she said in her statement that it was elective surgery, that's not an objective reason on why she denied the surgery or even who was scheduling the surgery. And if you take a look at her context of the statement as a whole, it's really her personal belief that because Von Tolwell was a prisoner, that this surgery wasn't important enough for her to be concerned about, and that he would just have to deal with the condition of the patient. In Colwell, there was a Nevada policy regarding those who had cataracts. Was there any Nevada policy at issue here? No, Your Honor, and this court has held that you don't need to have a policy in place. For example, if you look at Edmo, there was no prison policy that was in place when this court decided that the physicians who were treating Edmo had denied her treatment. So if there had been a policy, Dr. Johns might have been guiding herself by that. So what you're suggesting then is because there was no policy, Dr. Johns' decision is her own as opposed to that made by somewhere else. Yes, Your Honor. Yes, this was her decision to interfere with the surgery, and if you look at the specialist recommendations and even the prison itself suggested that Von Tolwell would need surgery when they denied his grievance on the very basis that surgery was being scheduled for his case. Do we know whether Nevada has provided trigger finger surgery for any other prisoners? I don't have that on me right now. I could check with my co-counsel and have her answer that possibly on appeal, but I believe... Would that be in the record? I don't think that's in the record, Your Honor, no. But this court has held, for example, that a fractured thumb is enough to grant surgery. In Jett, for example, he had a fractured thumb and the court said that just giving pain medication to treat that condition wasn't enough. And here, the trigger finger is in... There's evidence in the record that it's affecting multiple digits and that he's really... Dr. Long said at one point, he's really lacking tremendously. So it's not a condition where one finger is being minorly affected by it. It's multiple fingers to the point where he has a hard time, for example, grasping his cane, doing basic hygiene, feeding himself, things along those lines which are necessary in the day-to-day function of a prisoner. Can I ask, earlier in this case, the pain medications were taken away from Mr. Van Toewelbal and his cane was taken away. Can you shed a little bit of light on why that happened and what... Is that part of the claim here? Or are you just asking... They need to be directed to give the hand surgery? Yes, Your Honor. So there is some evidence that at one point, Dr. Everett did discontinue his pain medication and take away his cane temporarily. But what we're asking for here is really the focus on Dr. Johns and her active interference in getting the surgery scheduled. And then on top of that, the injunctive relief claim that the prison scheduled his surgery and make sure that the surgery gets done. Do we know why Dr. Everett took away the cane or the meds? I mean, that might be relevant to some reasoning on the part of Dr. Johns. According to Van Toewelbal's sworn declaration, he said that Dr. Everett told him that the prison had instructed Dr. Everett to discontinue the pain medication and also take away the cane. But we don't have much beyond that in the record. I mean, it's just hard to think as to why... I can understand why you might be taking away meds if they were abusing them or storing them up or selling them to other prisoners. But taking away a cane unless you've used it as a weapon seems inexplicable. Yes, Your Honor, I'd agree. And what we have pretty much to explain it is that Van Toewelbal said that Dr. Everett told him he was instructed to take the cane away. How do we make the distinction on these surgeries? Because these come up from time to time. And when do we find the line between an Eighth Amendment violation and a non-Eighth Amendment violation? Because you can imagine a whole host of, quote, elective surgeries that likely wouldn't trigger the Eighth Amendment. Is it the amount of pain? Is that the sole function we look at? You look to see how the condition is affecting their day-to-day life. And, for example, like in Jet, the fractured thumb was considered enough to reach that deliberate and different standard. And here, we have an even stronger case because it's not just one thumb. It's his entire... Both of his hands, pretty much. He can't do day-to-day functions. And it's really affecting how he can operate in the prison. But when Dr. John said he's going to have to learn to live with this condition, can we read that as a medical statement to say this isn't impeding him enough? I understand that it's going to be uncomfortable, but it's not something that is rising to such a high level that it's going to significantly impact him. Yeah. I see I'm out of time. Do you want me to answer? Yes, please answer the question. Perfect. So her statement, and because we're at summary judgment, we have to view that statement in favor of Von Tobel. And if you look at the entire context of her statement, the word adapt wasn't used as an adaptive therapy or an alternate form of treatment. Instead, it was, this is prison. You're just going to have to get used to it. You're just going to have to adapt on your own. And there's nothing in the record that gives up any follow-up adaptive therapy or anything like that. So the statement that, because she used the word adapt, she's not using it in a medical term. She's using it more as a personal belief that Von Tobel doesn't deserve surgery. I'd like to reserve my time for rebuttal. Thank you. Thank you. Good morning, Judge Nelson, Judge Bivey, Judge Bolton. For the record, my name is Greg Zanino. I'm the Deputy Solicitor General for the Nevada Attorney General's Office, and I'm representing the dependent appellees, including Dr. Johns, who is the focal point of the appeal in this case. Could I ask you to adjust your microphone up a little bit? Okay. Thank you. Speak up just a little bit. How's that? That's better. Okay. So, Von Tobel appeals from a grant of summary judgment on all claims against him. The magistrate issued a report and recommendation that the district court judge adopted without any comment or elaboration. Can I just jump into a question? Sure. The district court below and you on appeal are arguing that this is just a dispute between medical experts. It seems to me that the problem with that is the medical testimony is all on one side, which is he needs surgery. Dr. Johns doesn't seem to have given a medical reason for why he didn't need surgery. Can you tell me what the medical reason is why he doesn't need surgery? Granted, the record is not very well developed in terms of what Dr. Johns thought or believed, but I think we can speculate about what her motives were for telling. Why could we speculate? Why would we speculate on summary judgment? Well, we wouldn't speculate. I guess my point is what we would do is draw the most reasonable inference. I think the most reasonable inference based upon the medical record is that Von Tobel simply is not an ideal candidate for surgery. And is Dr. Johns competent to make that judgment when we've got the surgeons who have said that he needs surgery? I think she is. And that's not a disputed point of material fact? What I think the physicians are saying, Your Honor, is that in order to correct this condition, in order to fix it completely, he needs a surgery. But I don't think anybody has said that he simply requires surgery in order to lead a normal life. Didn't the physicians say the only thing that's going to help you is surgery? And that at one point in time, in response to his grievance, they said, Well, your grievance is denied because we're scheduling surgery. I mean, when we see that in the record, doesn't that drawing the inferences in favor of the non-moving party suggest that the only thing this record shows is that the only option left to him is surgery? I think that the single most decisive piece of evidence in the record is Dr. Wall's statement that this is an elective surgery. And keep in mind that Dr. Walls is not a prison physician. Dr. Walls is an outside physician. Going back to that term elective surgery, as judges and non-medical people, do we know what that means? Counsel for Mr. Vontobel just said that elective surgery means it's not emergency surgery, but surgery that can be scheduled. The term elective surgery, I don't know that I'm competent to say because he used the term elective surgery, that that means he could have it or he could not have it. It doesn't really matter. I understand, just based upon experience, that term to mean that the insurance typically won't pay for it. They won't pay for an elective surgery. In other words, it's not life-threatening. It may not even be life-altering. Well, but we have, I mean, that's why I was asking the questions before. There's clearly case law that says a fractured thumb, they had to provide it because it was a serious impediment. That's not life-threatening. Plenty of people have adapted to life without use of a thumb. But still, we have case law that says you've got to do that. So in one sense, it's elective, but in the other sense, we've said you've got to do it. Why is this different than those types of cases? I don't know that it's elective. I mean, I think the insurance companies would pay to fix a broken thumb. Right? I don't think necessarily that they will pay for surgery to repair tendonitis. Right? Tendonitis and this is tendonitis. How is that relevant here, what an insurance company would pay? Well, because it's based upon medical industry standards. I mean, these are industry standards. To be distinguished, I think, from Colwell v. Bannister, which is a situation where the Department of Corrections simply deemed the surgery to be elective. I mean, as far as I can tell, there was no... There was no record that he was not in any pain, that it didn't affect the functioning of the good eye and that he was perfectly functional and that it is considered elective other places because people are not denied driver's license or anything else on the basis of a cataract affecting only one eye. Here, we've got evidence that there is pain and that it is affecting daily functioning. Well, in Colwell v. Bannister, there was evidence and it was corroborated. It wasn't just the plaintiff's allegation that the plaintiff had run his hand twice through a sewing machine that he'd banged into people and that resulted in fights, that he split his head open because he bumped into something. So, I mean, there was evidence in that record that it was causing pain, even though the cataract wasn't directly causing pain. The consequences of the cataract were causing pain, right? And as far as I can tell, that was kind of the reasoning behind the Colwell decision, the fact that the consequence was that he was suffering pain because he couldn't see and he was doing things to hurt himself. Here, I don't know that there's any pain. There's certainly not any evidence. But there's medical records. I've read the medical records that said that he said that he was in pain. And he'd been given pain medication. Well, he'd been given pain medication for it. And doctors talked about treatment with steroids in order to, as an alternative, or make wait until he could get surgery. And I have no reason to believe, based upon the records, that the pain relievers are not adequate to manage the pain. But what's missing from all of this, counsel, is something from Dr. Johns that says, I've looked over all of these records. And I am making a medical determination that this is not required and that it is manageable through steroid treatments and pain medications. I just don't see anything here. And yet the magistrate said, there's a difference of medical opinion. Well, there was a difference of opinion. It wasn't clear that it was medical. Well, Dr. Johns is a physician. I think we can infer that she had a medical reason. How do we do that on summary judgment? How do you get to win on the basis of no evidence on your side? Well, the records supply the evidence. But the records are overwhelmingly on his side because there's no detail on the state's side. We have no records from Dr. Johns other than the reference to outside... It was obviously... She thought it was important enough to refer it to outside specialists. And he got a number of specialists. Good for the state for getting him to the specialists. And then when they recommended surgery, the record goes silent. Well, and I think your point goes to the objective inquiry, right? And I think there's also a subjective inquiry. Hold on. Why does Judge Bivey's point go to the objective inquiry? Because to me, your strongest argument potentially is the objective inquiry. But you don't seem to have made that very strongly in your brief that there's no basis for him to even have to get this. Once you do show... I mean, if you don't show an objective, then you've got to show subjective. And there's no question that Dr. Johns subjectively delayed this. So it seems like your only argument is that he never needed it in the first place. Well, I think Dr. Johns had certainly no reason to believe that this surgery was going to... Or the lack of surgery was going to... How can you seriously say that when you have... She referred him out to Dr. Walls, Dr. Long, Dr. Everett. They all said he had surgery scheduled. Can you touch base on why that surgery never happened? It was actually scheduled at least once, if not twice, and it never happened over four years. Well, and I've drawn the inference, right, that ultimately, you know, someone concluded, likely Dr. Johns, that he was simply not an ideal candidate for surgery because he had such a lengthy history of... Isn't that for the fact-finder to draw that inference, not for the trial judge, on summary judgment? I think that deliberate indifference is a very high standard, right? You have to get over a very high bar to prove deliberate indifference, and I think that it's pretty clear that no jury can draw the inference that Dr. Johns had, like, a bad motive or an improper motive for telling... But doesn't her statement, that is not disputed, that is under oath by Mr. Von Trapp, suggest deliberate indifference? No, I think it suggests that she's giving Von Trapp a dose of tough love. That's what it indicates to me. Counsel, did you help Dr. Johns prepare her affidavit, her declaration? No, I... That was a deputy attorney general that handled that. Okay. It's just really remarkable that when you've got lawyers involved in a process like this, and you've got the doctor in front of them, that none of these questions apparently were answered to the lawyers, or if they were answered, they weren't answered to the lawyer's satisfaction. And the silence of the record, you know, suggests a very, very different inference from the one that you're asking us to draw. And I don't see how we get to draw your inference on summary judgment, on your motion for summary judgment. Well, you know, as Judge Nelson indicated, right, again, I think, one, we can infer that this is not a serious need, right? It's tendinitis, right? And Mr. Von Togler's... I'm sorry. Where's the evidence that it wasn't serious, that it's tendinitis, that it's something commonly... I mean, all of these things were in the brief, but they're not in the record. And again, I think that goes back to Dr. Wall's statement, that this is elective. And I don't agree that elective is an uncertain term or an ambiguous term. I think elective means that... But does it matter if you and I have a different definition of elective surgery when nothing in the record says what they meant by that? I think that's a commonly understood term, elective, and it means not life-threatening. You know, I mean, if the insurance company won't pay for it, that, according to medical industry standards, is not something that's life-threatening or seriously life-altering. I mean, that's how I think you interpret the term. Gallbladder surgery would be elective? I think that gallbladder surgery... I think that gallbladder could potentially kill you. It might be performed on an emergency basis, but it isn't usually performed on an emergency basis. It can be scheduled and sometimes scheduled months out. I agree, but I... I'm just not sure what any of that proves. I don't know that that's elective, necessarily, because it can be deferred or be delayed. Sure. Elective doesn't go to the question of whether the surgery can be deferred or be delayed. Elective goes to the question of whether it's medically necessary, in my opinion. You've commented a couple of times about insurance companies not covering elective surgery. Is there anything in the record on that? Is there anything in the record? No. No. No. Ideally, there would be. Okay, counsel. Thank you for your argument.  Okay. Thank you. My name is Sarah Almquist, and I am also a certified law student representative. At the very most, defendants have established that there may be some ambiguity about the aspects of the record. There may be some ambiguity about the essence of the disputed record. There may be some ambiguity demonstrating that summary judgment is not appropriate at this point. Defendants continue to rely on speculation that is not in the record. The fact that surgery is elective does not mean that the prison  The fact that elective surgery does not mean that the prison does not need to provide it. The fact that elective surgery does not mean that the prison does not need to provide it. The fact that the words elective surgery are not a thousand and inflated. Counsel, we do have case law, though, that says the standard is pretty high here. It has to be medically unacceptable. It can't just be malpractice. It can't just be negligence. It has to be medically unacceptable under the circumstances to deny the surgery. What evidence is there that it's medically unnecessary here, as opposed to just yes, his life would be better if he had the surgery? Well, the medical need is that it impedes on the life's necessities. Here, he can't quite, after he's in the back room, he can't hold a spoon or a fork to eat. He can't do his daily activities and then on top of it, it is causing pain. So that is enough to show that he has a serious medical need. Is there a suggestion that surgery will help? Steroids were also proposed and they didn't work. Sometimes you can have procedures that, again, would be nice to test out, but is there evidence that this was just medically unacceptable to deny this? If he wasn't given steroids, which was also a recommendation, I'm not sure that that would have been medically unacceptable to deny him steroids, and I'm wondering if it's just a different analysis here with the surgery. Here we have the four separate recommendations for surgery and that's going with Dr. John's denial of surgery, which was not a medical opinion. Looking at the record in favor of Mr. Von Togel as a non-moving party, the doctor said he needed surgery. Dr. John's non-medical opinion and she decided to deny it. Further, even if it was a medical opinion, it was an inferior one, and this court has held in cases such as Hamilton where prison officials choose to rely on a medical opinion which is a reasonable one. That amounts to a denial of medical treatment. Here, Dr. John's denial of this treatment was inferior because it was based on a non-medical opinion. Not to deal with it by his hand. Further, it was contrary to his four separate recommendations for surgery and the president himself suggested that surgery was necessary to fight his grievance on the basis that surgery was needed. Further, the record is silent as to Dr. John's denial of surgery. Your honors. Thank you. Thank you both for enlightening us on this case and a special thanks to the students who again have argued very well today. We're grateful for your service and the case is now submitted.
judges: BYBEE, NELSON, Bolton